UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MINCHALA, WILSON MINCHALA, and BYRON DE PAZ, on behalf of themselves, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>　　　　-against-<br><br>JARRO CONTRACTING CO, INC., and FABIAN JARRO, individually,<br><br>　　　　　　　　　　　　　Defendants. | **Docket. No.: 25-cv-01002**<br><br>**CLASS AND**<br>**COLLECTIVE ACTION**<br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs JOHN MINCHALA ("J. Minchala"),  WILSON MINCHALA ("W. Minchala"), and BYRON DE PAZ ("De Paz"), on behalf of themselves, individually, and on behalf of all others similarly situated ("Plaintiffs," "FLSA Plaintiffs" or "Rule 23 Plaintiffs," where appropriate), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against JARRO CONTRACTING CO, INC. ("Jarro Contracting"), and FABIAN JARRO, individually ("Jarro") (and collectively, "Defendants"), allege upon knowledge as to themselves and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.　　　Plaintiffs bring this action on behalf of themselves and all others similarly situated to recover damages for Defendants' systemic and continuous violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160 *et seq*., and New York Comp. Codes R. & Regs ("NYCRR") Tit. 12, § 142-2.2; (iii) unpaid wages for past work performed in violation of the NYLL; (iv) unlawful deductions to Plaintiffs' wages in violation of NYLL § 193; (v) the NYLL's requirement that employees performing manual labor receive their weekly pay on

a timely basis and not later than seven calendar days after the end of the week in which the wages are earned per NYLL § 191(1), *et. seq*.; (vi) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3), as codified by the New York Wage Theft Prevention Act ("WTPA"); (vii) the NYLL's requirement that employers furnish employees with a wage notice at hire, and at the time of any changes to employees' pay, containing specific categories of accurate information, per NYLL § 195(1); (viii) Defendants' violations of one of the anti-retaliation protections of NYLL § 215, culminating in Defendants' unlawful termination of Plaintiffs' employment; and (ix) any other claim(s) that can be inferred from the facts set forth herein.

2.      Defendant Jarro Contracting is a construction enterprise owned and operated by Defendant Jarro, with a principal place of business located at 38 Prospect Avenue, Ossining, NY 10562, which employs workers, laborers, and other personnel to perform manually laborious construction work, such as laboring, carpentry, electrical work, plumbing, and other construction-related duties at various in and out of state residential and commercial jobsites.

3.      As set forth below, Plaintiffs each worked for Defendants in various construction positions spanning from January 2017 through August 2024.

4.      Despite regularly working beyond forty hours in a week, Defendants failed and refused to pay Plaintiffs proper overtime compensation for any hours Plaintiff worked beyond forty each week, resulting in Plaintiffs suffering unpaid overtime compensation in willful violation of both the FLSA and NYLL.

5.      Worse, Defendants frequently operated under an unlawful policy and practice of, *inter alia*, regularly requiring Plaintiff to work extensive hours, while only paying the first eight hours worked each day, frequently paying nothing for any hours worked beyond eight in a

workday, or beyond forty-eight in a workweek, abjectly violating the FLSA and the NYLL.

6.    Plaintiffs therefore bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.

7.    But wage theft and failing to pay overtime compensation was not the extent of Defendants' wrongdoing, for, as icing on the cake, Defendants unlawfully retaliated against Plaintiffs, by reducing their hours, terminating their employment -- or in the case of Plaintiff De Paz, undercutting his hourly rate of pay -- in response to Plaintiffs' repeated complaints about Defendants' unlawful pay practices, in violation of the anti-retaliation protections of NYLL § 215.

8.    Separately, Defendants failed to furnish Plaintiffs with accurate wage statements on each payday in violation of NYLL § 195(3), and in Defendants' effort to further conceal their wrongdoing from Plaintiffs.

9.    Plaintiffs therefore bring their NYLL claims pursuant to the class action provisions of Fed. R. Civ. P. 23(b)(3) on behalf of themselves and all other similarly situated workers who worked for Defendants in New York.

## JURISDICTION AND VENUE

10.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

11.    The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

12.    Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

13.    On March 20, 2020, then-New York Governor Andrew Cuomo signed Executive Order 202.8, which tolled for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020, and continued through subsequent extensions of that Order via Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, through November 3, 2020. In total, the Executive Orders provided for a toll of two hundred and twenty-eight (228) days.

## PARTIES

14.    At all relevant times, Plaintiffs worked for Defendants in New York, and were each "employees" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR.

15.    Defendant Jarro Contracting is an active, domestic, for-profit corporation engaged in the business of construction, with a principal place of business located at 38 Prospect Avenue, Ossining, NY 10562.

16.    At all relevant times, Defendants employed more than eleven (11) employees.

17.    All of Plaintiffs' primary job duties tasked them with performing manually laborious work for Defendants.

18.    Defendant Jarro is the owner, manager, agent and day-to-day operator of Defendant Jarro Contracting.

19.    Defendant Jarro is responsible for overseeing and controlling all of the daily operations of Defendant Jarro Contracting, actively participates in the daily operations of

Defendant Jarro Contracting, and exerts direct control over the work Plaintiffs performed.

20.    Defendant Jarro has the power and authority to directly affect the quality of work conditions and employment of Plaintiffs, and all other employees of Defendant Jarro Contracting.

21.    Defendant Jarro hired Plaintiffs to work at Defendant Jarro Contracting, and ultimately terminated Plaintiffs' employment there.

22.    Defendant Jarro provided instructions and directions to Plaintiffs and to the enterprise's other employees on how and when to perform their job duties, and supervised the work that Plaintiffs performed each day.

23.    Defendant Jarro set, established, and determined Plaintiffs' work hours and work schedules.

24.    Defendant Jarro was the individual responsible for controlling and determining  at which jobsite locations Plaintiffs were required to work each day and each week for Defendant Jarro Contracting.

25.    Defendant Jarro set and established Plaintiffs' methods and rates of pay, as well as any raises or changes to Plaintiffs' pay.

26.    Defendant Jarro was responsible for paying Plaintiffs their wages, which Defendant Jarro frequently paid by a corporate check issued from Defendant Jarro Contracting.

27.    Defendant Jarro has the exclusive power and authority over all final personnel and payroll decisions of Defendant Jarro Contracting.

28.    Defendant Jarro is the individual responsible for maintaining all employment records of Defendant Jarro Contracting, including, without limitation, any and all records relating to Plaintiffs' hours worked and pay received.

29. Accordingly, at all relevant times hereto, Defendant Jarro was Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

30. Moreover, at all times relevant, Defendant Jarro Contracting was and is an enterprise engaged in interstate commerce in that Defendant Jarro Contracting (i) has purchased goods, tools, and supplies for construction and scaffolding work such as, among other things, wood, construction materials, cement, sheetrock, and steel frames, among others, and large machinery, as well as a dozen or more corporate vehicles and trucks, all of which constitute business through regular streams and channels of interstate commerce from vendors / suppliers that originated in and out of New York state; and/or have had two or more employees engaged in interstate commerce or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material that have been moved in or produced for commerce by any person: and (ii) has had annual gross volume of sales of not less than $500,000.00. This status subjects Defendant Jarro Contracting to FLSA's overtime requirements as an enterprise.

31. By way of one example, Defendant Jarro Contracting regularly required Plaintiffs and similarly situated employees to handle and work daily with the above-referenced construction-related items, and other equipment and materials for its business, all of which, Defendants purchased and transported through the ordinary channels of interstate commerce.

32. Moreover, Defendant Jarro required Plaintiffs and similarly situated employees working for Defendant Jarro Contracting to perform daily construction, carpentry, scaffolding, roofing, and other manually laborious work at Defendants' jobsites and related to Defendants' business which subjects Defendants to the FLSA's overtime requirements for individuals.

33. Accordingly, Defendant Jarro Contracting was and is an employer of Plaintiffs within the meaning of the FLSA, NYLL, and NYCRR.

## FACTUAL ALLEGATIONS

*Plaintiff John Minchala ("J. Minchala")*

34.     Defendants employed Plaintiff J. Minchala as a construction worker and handyman from approximately November 2017 until March 14, 2020, and then again, from approximately June 8, 2023 until August 27, 2024.

35.     Defendants required Plaintiff J. Minchala to work, and indeed Plaintiff did regularly work, a regular schedule of six (6) days per week, Monday through Saturday, from approximately 7:30 a.m., until approximately 4:00 p.m., for a total of nine and a half (9.5) hours worked per day.

36.     However, in addition to his above regular work schedule, Defendants required Plaintiff J. Minchala, at the conclusion of each workday, to continue working by driving the Defendants' work truck or van to Defendants' office, together with many of Defendants' other workers and tools, in order to close out each workday at Defendants' office.

37.     In doing so, Defendants required Plaintiff J. Minchala to finish his work day no earlier than at approximately 5:30 p.m., or later, each day.

38.     As such, Plaintiff J. Minchala's total workweek consisted of sixty (60) hours or more per week.

39.     Additionally, for two months during each year, Defendants required Plaintiff J. Minchala to work a "double shift," which began at 6:00 p.m., and ended at 2:00 a.m.

40.     As such, for two months during each year, Defendants required Plaintiff J. Minchala to work, and he did in fact work, a total workweek which consisted of approximately sixty-eight (68) hours per week.

41.     From approximately November 2017 through March 2020, Defendants purported to pay Plaintiff J. Minchala at a rate of $25.00 per hour.

42. From approximately June 2023 through August 2023, Defendants purported to pay Plaintiff J. Minchala at a rate of $26.00 per hour.

43. From approximately September 2023 through August 2024, Defendants purported to pay Plaintiff J. Minchala at a rate of $30.00 per hour.

44. However, for the entirety of Plaintiffs' employment, Defendants regularly failed to pay Plaintiff J. Minchala for all his hours worked, and instead undercut his wages by paying him only for his first eight (8) hours worked each day, regardless of how many additional hours he actually worked each day.

45. Each week, Defendants paid Plaintiff J. Minchala by two (2) separate checks:  one by a corporate check to cover Plaintiff J. Minchala's wages for his first thirty-two (32) hours, which Plaintiff sometimes received together with a paystub, and which Defendants made payable on a W-2; and a second personal check to cover Plaintiff J. Minchala's wages for up to sixteen (16) hours, which Defendants made payable on a 1099.

46. By way of example only, Plaintiff's corporate check covering his wages for his first thirty-two (32) hours of work was frequently paid in the amount of $960.00, while Plaintiff's personal check covering his wages for sixteen (16) hours of work was frequently paid in the amount of $480.00, for a total wage of $1,440.00 per week, which only compensated Plaintiff for forty-eight (48) hours of work per week, despite Plaintiff regularly working more hours.

47. Moreover, when paying Plaintiff for his first forty-eight (48) hours of work, Defendants failed and refused to pay Plaintiff any overtime compensation for the eight (8) hours paid over forty (40) each week.

48. And although Plaintiff J. Minchala regularly worked approximately sixty (60) or more hours each week from November 2017 until March 14, 2020, and from June 8, 2023, until

August 27, 2024, Defendants did not pay Plaintiff at a wage rate of time and a half (1.5) his regular rate of pay for each hour worked in excess of forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA, NYLL, and NYCRR.

*Plaintiff Wilson Minchala ("W. Minchala")*

49.     Defendants employed Plaintiff W. Minchala as a construction worker, builder, and painter, from January 2017 through August 2024.

50.     Defendants required Plaintiff W. Minchala to work, and indeed Plaintiff did regularly work, a regular schedule of six (6) days per week, from approximately 8:00 a.m., until approximately 10:00 p.m., or 12:00 a.m., on Monday through Friday, and from approximately 7:00 a.m., until approximately 4:00 p.m., on Saturday, for a total workweek consisting of approximately eighty-four (84) hours worked per week.

51.     Defendants paid Plaintiff W. Minchala a flat hourly rate without regard for the number of hours Plaintiff worked per week, in the amount of $33.00 from January 2017 through December 2022, and $40.00 from January 2023 until August 2024.

52.     Although Plaintiff W. Minchala regularly worked approximately eighty-four (84) hours per week from January 2017 through August 2024, Defendants did not pay Plaintiff W. Minchala at a wage rate of time and a half (1.5) his regular rate of pay for each hour worked in excess of forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA, NYLL, and NYCRR.

53.     Moreover, Defendants operated under various unlawful policies and pay practices, including, without limitation, frequently paying Plaintiff by a 1099 rather than a W-2 in a deliberate attempt to circumvent federal and state labor laws, and by frequently deducting several hundred dollars from Plaintiff's weekly paycheck without justification.

*Plaintiff Byron De Paz ("De Paz")*

54.     Defendants employed Plaintiff De Paz as a construction worker, painter, repairer, and remodeler from approximately 2018 through approximately August 2021.

55.     Defendants required Plaintiff De Paz to work, and indeed Plaintiff did regularly work, a regular schedule of six (6) days per week, from approximately 8:00 a.m., until approximately 4:00 p.m., on Monday through Saturday, for a total workweek consisting of approximately forty-eight (48) hours worked per week.

56.     In addition to his regular work schedule, for two months during each year, Defendants required Plaintiff De Paz to work an additional, double shift, which began at 7:00 p.m., and ended at 12:00 a.m.

57.     As such, for two months during each year, Defendants required Plaintiff De Paz to work, and he did in fact work, a total workweek which consisted of approximately fifty-three (53) hours per week.

58.     Defendants paid Plaintiff De Paz by a flat hourly rate in the amount of $20.00 during 2017 and 2018; $22.00 during 2019; $25.00 during 2020; and $23.00 during 2021.

59.     Although Plaintiff De Paz regularly worked approximately forty-eight (48) to fifty-three (53) hours per week throughout his employment Defendants did not pay Plaintiff De Paz at a wage rate of time and a half (1.5) his regular rate of pay for each hour worked in excess of forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA, NYLL, and NYCRR.

**_Defendants' Unlawful Retaliation Against Plaintiffs Violating NYLL § 215_**

60.     Making matters worse, Defendants unlawfully retaliated against Plaintiffs in direct response for their lodging numerous good faith complaints about their improper pay, in violation

of Section 215 of the NYLL.

61.    Throughout Plaintiff J. Minchala's employment, he frequently complained to Defendant Jarro about the unlawful manner in which Defendant Jarro paid him, including without limitation the failure to pay Plaintiff J. Minchala any overtime wages, and the failure to pay Plaintiff J. Minchala for all hours worked.

62.    Plaintiff J. Minchala complained to Defendant Jarro about not being paid for all hours worked, about being paid for sixteen hours by cash or by a separate personal check, and without any accompanying paystub, about his personal check indicating "0.0 hours," which not only was false, but worse, prevented Plaintiff J. Minchala from being able to ascertain how many hours of work the check covered, and about the Defendants' taxing his personal check by a 1099, which resulted in Plaintiff J. Minchala being taxed inappropriately and excessively, despite Plaintiff J. Minchala working as a full-time employee of Defendants.

63.    Worse yet, Defendants frequently paid the Plaintiffs with "bad checks" lacking sufficient funds to satisfy the amounts owed to Plaintiffs, thereby causing Plaintiffs to be underpaid, or paid late, and thereby less frequently than on a timely basis.

64.    As such, Defendants failed to regularly compensate Plaintiffs at least as frequently as on a weekly basis despite Plaintiffs working for Defendants as manual workers.

65.    As a result, Plaintiffs were not paid all earned wages when they were due, resulting in Plaintiffs suffering actual concrete injury of underpayment of their wages.

66.    In failing to pay all wages to Plaintiffs on a timely basis, Plaintiffs were denied the time-value of their money by Defendants' underpayments. Specifically, Plaintiffs suffered actual monetary injury in that they were unable to invest, save, or purchase utilizing the wages she earned at the time value it held when it was due.

67.    Worse, Defendants' failure to issue checks backed by sufficient funds to clear caused Plaintiffs to incur additional unnecessary expenses, which, despite their requests, Defendants then refused to compensate them for, by attempting to cash checks lacking sufficient funds.

68.    Despite Plaintiffs' repeated complaints concerning these wage issues, rather than taking any corrective measure, Defendants continued its unlawful pay practices in violation of law.

69.    Making matters worse, on his last day of work, Defendant Jarro asked Plaintiff J. Minchala and four other workers to remain working past eight hours, and when Plaintiff J. Minchala informed Defendant Jarro - - consistent with his prior wage complaints outlined above - - that he would only continue if he will be paid a proper overtime wage for these extra hours, Defendant Jarro immediately fired Plaintiff J. Minchala, and informed Plaintiff J. Minchala that, "I don't need you, I'll find other workers."

70.    This conduct, inclusive of the retaliatory termination of Plaintiff J. Minchala's employment, abjectly violates NYLL § 215.

71.    Worse, while Defendant Jarro subsequently reemployed these other workers, Defendant Jarro did not permit Plaintiff J. Minchala to return to work, in further retaliation for Plaintiff J. Minchala's complaints to Defendant Jarro about improper pay, and in further violation of NYLL § 215.

72.    Similarly, Defendants also subjected Plaintiff W. Minchala to all the same wage issues and violations of law outlined above, and Plaintiff W. Minchala, too, frequently lodged the same complaints to Defendant Jarro, which Defendants perpetually refused to rectify.

73.    Instead, on several occasions, Defendant Jarro ordered and sent Plaintiff W. Minchala home early from work for complaining, while informing Plaintiff W. Minchala that he

should stop complaining because "there are other workers out there looking for work who can replace you."

74.     Harmonizing with the discord felt by both Plaintiff J. Minchala, and Plaintiff W. Minchala, Plaintiff De Paz, too, lodged the very same good faith wage-related complaints about his unlawful pay to Defendant Jarro.

75.     In direct response thereto, Defendant Jarro promptly cut Plaintiff De Paz's hourly rate of pay in direct retaliation and as a punishment for him exercising his rights protected under the NYLL.

76.     By way of example only, in 2021, Defendants unlawfully penalized Plaintiff De Paz for lodging wage complaints and retaliated against Plaintiff De Paz by lowering his hourly rate of pay from $25.00, to $23.00.

77.     Notwithstanding Defendants' retaliatory reduction to Plaintiff De Paz's pay, Plaintiff De Paz continued to voice his opposition to Defendants' unlawful wage theft while working for his unlawfully reduced pay.

78.     Undeterred by Defendants' retaliatory reduction to his wage, Plaintiff De Paz persisted in his opposition to Defendants' wage theft practices, including by lodging additional verbal complaints about the Defendants' continued failures to pay their workers on a timely basis.

79.     In response, as was the case with his co-Plaintiffs, Defendants continued their campaign of unlawful retaliation against Plaintiff De Paz by terminating his employment.

80.     Defendants' FLSA violations were willful, as demonstrated by Defendants willfully failing to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by both the NYLL and the FLSA, in an attempt to conceal their unlawful conduct from Plaintiffs and others similarly situated.

81.    Moreover, Defendants willfully failed to keep accurate and contemporaneous payroll records as required by both NYLL and the FLSA, in furtherance of their efforts to conceal their unlawful conduct from Plaintiffs and others similarly situated.

82.    Moreover, to conceal their wrongdoing, on each occasion when Defendants paid Plaintiffs, Defendants often paid Plaintiffs largely in cash or by a separate Form-1099, while failing to provide Plaintiffs with any paystub, wage statement, or other written document, let alone one that included, *inter alia*, their total hours worked, and regular and overtime rate of pay during each such pay period.

83.    Worse, Defendants paid Plaintiffs their wages in separate parts on multiple checks during the same pay period in a deliberate attempt to purport to reflect Plaintiffs receiving a different rate of pay, in an attempt to circumvent federal and state overtime laws - - and demonstrating further indications of Defendants' willful violations of the FLSA and bad faith refusal to attempt to comply with the law.

84.    Defendants' failure to pay Plaintiffs all wages to which they were entitled was motivated by Defendants' bad faith and malice, and desire to undercut workers' wages.

85.    To further conceal their wrongdoing, Defendants failed to issue Plaintiffs accurate weekly wage statements that disclosed the number of hours Plaintiffs worked each week, or their overtime rate of pay in violation of the NYLL.

86.    Specifically, since Plaintiffs' wage statements failed to record the number of overtime hours worked and made no mention of their compensation at the regular and mandatory rate for overtime hours, Plaintiffs' wage statements were plainly insufficient as a matter of law.

87.    To further conceal their wrongdoing, Defendants failed to require Plaintiffs and others similarly situated to regularly punch-in and punch-out for all of their working time, while

willfully failing to provide proper payment of all wages owed, together with accurate wage statements listing their actual hours worked, despite knowing fully that failing to pay all wages owed and overtime compensation was in direct violation of the FLSA, and NYLL.

88.    Defendants' FLSA violations were willful, as further demonstrated by Defendants willfully failing to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA, in an attempt to conceal their unlawful conduct from Plaintiffs and others similarly situated.

89.    Moreover, Defendants willfully failed to keep accurate and contemporaneous payroll records as required by the FLSA in furtherance of their efforts to conceal their unlawful conduct from Plaintiffs and others similarly situated.

90.    Indeed, Plaintiffs suffered a concrete injury in fact due to Defendants' failure to provide timely and accurate wage statements on each pay day because, lacking any real documentation from Defendants that showed his true hours and pay, Plaintiffs were unable to meaningfully advocate for themselves and others due to the lack of accurate information provided to them during each pay period from Defendants.

91.    If the Defendants had provided Plaintiffs with paystubs accurately reflecting the actual hours they worked and that they were entitled to be paid for all hours, Plaintiffs would have been able to advocate for themselves and for their coworkers to be paid higher wages during their employment, exactly as Plaintiffs are now doing through this action upon independently learning of their rights.

92.    Indeed, because Plaintiffs were not aware they should have received compensation at a rate of time and a half for hours in excess of forty in a workweek, Plaintiffs waited years before

bringing their complaint against Defendants, causing them to lose the time-value of the money they should have earned if they were accurately appraised of their total hours worked each week.

## COLLECTIVE ACTION ALLEGATIONS

93.    Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial workers of Defendants, who during the applicable FLSA limitations period, performed construction or manual work for Defendants and who consent to file a claim to recover damages for overtime compensation that is legally due to them; and/or liquidated damages that are legally due to them ("FLSA Plaintiffs").

94.    Defendants treated Plaintiffs and all FLSA Plaintiffs similarly, in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar job duties and tasks, as described above; (2) were subject to the same laws and regulations; (3) were paid by Defendants in the same or similar manner; (4) were regularly required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay, for all hours worked per workweek in excess of forty.

95.    At all relevant times, Defendants have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at the rate of one and one-half times their respective regular rate of pay for all hours worked each workweek above forty, yet purposefully and willfully chose and choose not to do so.

96.    Defendants' willful violations of the FLSA are evidenced by their knowledge that their policies violated the FLSA, and their intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements. Further, discovery will reveal evidence that Defendants

blatantly ignored the FLSA's explicit requirement that employees must be paid for *all* hours suffered or permitted to be worked and that underpaying its workers is an illegal practice.

97.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

98.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## <u>RULE 23 CLASS ALLEGATIONS</u>

99.     In addition, Plaintiffs seek to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCRR.

100.    Plaintiffs seek certification of the following FRCP 23 class:

> Current and former non-managerial workers who performed any work for any of the Defendants in New York during the statutory period within ("Rule 23 Plaintiffs").

101.    All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

102.    Moreover, Plaintiffs and the Rule 23 Plaintiffs have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. For instance, Plaintiffs and the Rule 23 Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by Defendants' nonpayment of any proper minimum wages or overtime wages. Specifically, Plaintiffs and the Rule 23 Plaintiffs were deprived of their ability to purchase by Defendants' nonpayment

of any proper minimum wages or overtime wages, invest said wages, accrue interest on their wages, or otherwise utilize the value that their wages would have held had they been properly paid to Plaintiffs.

## Numerosity & Ascertainability

103.    During the applicable NYLL limitations period, the Defendants have, in total, employed approximately 40 other employees that are putative members of this class.

104.    The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

## Common Questions of Law and/or Fact

105.    There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff, including whether their rates of pay fell below the New York minimum wage rate; (3) whether the Defendants compensated all overtime wages due to Rule 23 Plaintiffs; (4) whether the Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by N.Y. Lab. Law § 195(3); (5) whether the Defendants have kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (6) whether the Defendants kept and maintained records with respect to the compensation paid to the Rule 23 Plaintiffs for each hour worked; (7) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (8) whether  Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and WTPA; and (9) if so, what constitutes the proper measure of damages.

## Typicality of Claims and/or Defenses

106.    As described herein, the Defendants employ(ed) Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL. The Plaintiffs' claims are typical of the claims of the Rule 23 Plaintiffs whom he seeks to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendants in New York; Defendants failed to pay them properly for all regular and overtime hours worked; and Defendants did not provide them with accurate wage statements on each pay day as required by applicable law. Plaintiffs and the Rule 23 Plaintiffs enjoy all of the same statutory rights under the NYLL, inclusive of the requirements to be paid at or above the minimum wage, for all overtime compensation due, and to be furnished with accurate wage notices upon hire and wage statements on each payday.

107.    Plaintiffs and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendants' failure to comply with the NYLL and WTPA. Plaintiffs and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiffs' claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

## Adequacy

108.    Plaintiffs, as described herein, worked the same or similar job duties as Rule 23 Plaintiffs throughout their employment with Defendants. Defendants did not pay Plaintiffs for all overtime hours due nor did Defendants furnish Plaintiffs with accurate wage statements on each payday, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

109.    Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer.

Thus, Plaintiffs would properly and adequately represent the current and former employees whom Defendants have also subjected to the treatment alleged herein.

110.    Additionally, Plaintiffs' counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law. J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions. Accordingly, Plaintiffs' counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

## Superiority

111.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

112.    Plaintiffs have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class. Indeed, at all relevant times herein, the

Defendants treated Plaintiffs identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

113.    Any lawsuit brought by a worker based in New York and employed by Defendants would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

114.    Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

115.    Each hour that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for the Defendants' benefit.

116.    Defendants acted in the manner described herein so as to minimize its overhead while maximizing profits.

## FIRST CLAIM FOR RELIEF BY PLAINTIFF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

117.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

118.    Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) *et seq*.

119.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

120.    As described above, each Defendant is an "employer" within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

121.    Plaintiffs and FLSA Plaintiffs regularly worked in excess of forty hours per week, yet the Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the

FLSA's overtime provisions.

122.    The Defendants' violations of the FLSA as described in this Complaint have been willful and intentional, demonstrated by their failure to post notice of the FLSA's requirements, to maintain accurate contemporaneous time records, and to accurate advise Plaintiffs of their rights to be paid. Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of Plaintiffs nor FLSA Plaintiffs.

123.    Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rate of pay.

124.    Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

<u>**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**</u>
<u>*Unpaid Overtime under the NYLL and the NYCCRR*</u>

125.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

126.    N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

127.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

128.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

129.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his/their regular rate of pay.

130.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unlawful Deductions from Wages in Violation of the NYLL and the NYCRR*

131.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

132.    N.Y. Lab. Law § 193 prohibits any employer from making any deduction from the wages of an employee, provided for several non-applicable exceptions.

133.    As described above, Defendants are "employers" within the meaning of the NYLL and NYCCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are employees within the meaning of the NYLL and NYCCRR.

134.    As also described above, Defendants frequently unlawfully retained and withheld hundreds of dollars from Plaintiffs' paychecks – without authorization nor justification to do so – by implementing a policy of failing to pay Plaintiffs for all hours worked, and amounting to blatant wage theft, stolen wages, and specifically, the type of unlawful deductions from his wages prohibited by the NYLL, WTPA, and 12 NYCRR § 142-2.10.

135.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' unlawful deductions.

**FOURTH CLAIM FOR RELIEF BY PLAINTIFF AGAINST DEFENDANTS**
*Failure to Pay All Wages on a Timely Basis in Violation of the NYLL*

136.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

137.    NYLL §§ 191(1)(a) requires that employers pay their manual worker employees their wages on a weekly basis.

138.    As described above, Defendants are "employers" within the meaning of the NYLL and NYCCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are employees within the meaning of the NYLL and NYCCRR.

139.    As also described above, Plaintiffs worked for Defendants as manual laborers yet Defendants failed to pay Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action all wages earned on a weekly basis as the NYLL requires.

140.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are entitled to any unpaid wages, liquidated damages associated with any missed or late payment, interest, and attorneys' fees for Defendants' violations of the NYLL's requirement to pay all wages to manual workers on a weekly basis.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL and the NYCRR*

141.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

142.    Defendants are "employers" within the meaning of the NYLL, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL.

143.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

144.    As described above, Defendants, on each payday, failed to furnish Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, with accurate wage statements containing the criteria required under the NYLL, specifically, NYLL § 195(1), *et seq*., and 12 NYCRR § 142-2.7, *et seq*.

145.    Specifically, Defendants failed to furnish Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action with accurate wage statements on a weekly basis, and that if/when Defendants did furnish a wage statements, it failed to include, *inter alia*, their actual regular and overtime hours worked, corresponding regular and overtime rates of pay, or a correct pay period.

146.    Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt in to this action in the amount of $250.00, per Plaintiff, for each workday that the violations occurred, up to a statutory cap of $5,000.00, per Plaintiff.

### SIXTH CLAIM FOR RELIEF AGAINST  DEFENDANTS
*Failure to Furnish Wage Notice in Violation of the NYLL*

147.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

148.    Defendants are "employers" within the meaning of the NYLL, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL.

149.    NYLL § 195(1) mandates that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

150.    As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

151.    As also described above, Defendants failed to furnish Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

152.    Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00, per Plaintiff.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violations of the Anti-Retaliation Provisions under the NYLL § 215(1)*

153.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

154.    New York Labor Law § 215(1) provides that "No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer . . . that the employer has violated any provision of this chapter [the Labor Law]."

155.    As set forth above, Defendants retaliated against Plaintiffs for engaging in protected activity. Specifically, Plaintiffs frequently complained about Defendants' wage violations, as alleged herein, and in direct response to Plaintiff complaining of Defendants' wage violations, Defendants retaliated against Plaintiffs by, among other things, cutting Plaintiffs' hours and/or pay, making derogatory remarks about Plaintiffs, and terminating their employment in direct response thereto. These actions, among others, were in direct response to Plaintiffs raising informal

complaints against Defendants for their failure to pay the premium rates for overtime hours worked in violation of the NYLL § 160.

156.    The temporal proximity between Plaintiffs' wage complaints and Defendants' aggressive or retaliatory behaviors gives rise to an inference of retaliation.

157.    As a direct and proximate result of Defendants' conduct in violation of the NYLL, Plaintiffs suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, physical and emotional pain and suffering and loss of earnings for which he is entitled to an award of monetary damages and other relief.

## DEMAND FOR A JURY TRIAL

158.    Pursuant to FRCP 38(b), Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants, and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Designation of this action as a Fed.R.Civ.P. 23(b)(3) class action on behalf of Plaintiffs and Rule 23 Plaintiffs, and prompt issuance of notice pursuant to Fed.R.Civ.P. 23(c)(2) to Rule 23 Plaintiffs, apprising them of the pendency herein, and tolling of the statute of limitations;

f.      Designation of Plaintiffs and undersigned counsel as class and collective action representatives under the FRCP and FLSA;

g.      All damages that Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

h.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

i.      Awarding Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs, their costs and disbursements incurred in connection with this action, as well as their reasonable attorneys' fees, expert witness fees and other costs;

j.      Awarding Plaintiffs with a service award for their role as class and collective action representative and in recognition for their dedication to the Rule 23 Class and FLSA Plaintiffs and willingness to come forward as lead Plaintiffs on behalf of Rule 23 Plaintiffs and FLSA Plaintiffs;

k.      Pre-judgment and post-judgment interest, as provided by law; and

l.    Granting Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated: New York, New York
         February 4, 2025

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**


                         By:    _____
                                        Avraham Y. Scher, Esq.
                                        Michael R. Minkoff, Esq.
                                        Jon L. Norinsberg, Esq.
                                        110 East 59th Street, Suite 2300
                                        New York, New York 10022
                                        Tel.: (212) 227-5700
                                        *Attorneys for Plaintiffs and Putative Class
                                        and Collective*